# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:03-CR-00200-GCM-CH

| | |
|---|---|
| UNITED STATES,<br><br>Plaintiff,<br><br>v.<br><br>JOLLIETT KELLY JR.,<br><br>Defendant. | <u>**ORDER**</u> |

**THIS MATTER** comes before the Court upon Defendant Jolliet Kelly, Jr.'s *pro se* "Motion for Reduction of Sentence Pursuant to Rule 35 Compassionate Release" [ECF Doc. 117], *pro se* "Motion for Reduction of Sentence Pursuant to Rule 35 Compassionate Release" [ECF Doc. 118], and "Supplemental Memorandum in Support of First Step Act Motion" [ECF Doc. 131], the last of which was filed by counsel on October 21, 2020.  Various other filings were made by Defendant Kelly over the course of the briefing period and the Government has filed a Response to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF Doc. 124], Sur-Reply to Defendant's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [ECF Doc. 127], and Response Opposing a Reduction in Sentence Under the First Step Act [ECF Doc. 134].  Defendant's counsel filed a Reply in Support of First Step Act Motion [ECF Doc. 135] on November 25, 2020.  These matters, now being fully briefed, are ripe for review.

## I. BACKGROUND

Defendant pled guilty to one count of conspiracy to possess with intent to distribute at least fifty grams of cocaine base in violation of 21 U.S.C. § 841(b)(1)(A), § 846.  ECF Doc. 122 at 1.

Defendant was also charged with possessing with intent to distribute at least fifty grams of crack cocaine, possessing a firearm in furtherance of a drug-trafficking offense, and possessing a firearm as a convicted felon. ECF Doc. 25 at 1–3. However, Defendant entered a plea agreement with the United States and these other counts against him were dismissed. ECF Doc. 56. The presentencing investigation report concluded Defendant was subject to the career offender enhancement based on Defendant's prior drug-trafficking convictions and calculated the guidelines range as 262 to 327 months. ECF Doc. 133 at 1. The Court departed downward from that range and imposed a sentence of 240 months with five years supervised release. *Id.* During his imprisonment, Defendant has received approximately twenty-five disciplinary actions. *Id.* at 3. He has also participated in approximately fifty-seven education programs or work assignments while incarcerated. *Id.* at 3–4. Defendant now seeks a reduction in his sentence to time served.

## II. DISCUSSION

Defendant seeks a reduction in his sentence under two separate legal theories. Defendant's first two motions are for compassionate release ("Motions for Compassionate Release"), while the third motion (characterized as a supplemental memorandum) requests relief pursuant to Section 404 of the First Step Act of 2018. Because Defendant's third motion requires the most in-depth analysis, some of which is also beneficial to the Court's analysis of Defendant's Motions for Compassionate Release, the Court begins by analyzing whether Defendant is entitled to sentence reduction under Section 404 of the First Step Act of 2018 ("First Step Act").

### a. Defendant's Motion to Reduce Sentence Under Section 404

The First Step Act gives retroactive effect to Sections 2 and 3 of the Fair Sentencing Act of 2010, which reduced the former 100:1 crack-to-powder mandatory minimum ratio to an 18:1 ratio. *United States v. Wirsing*, 943 F.3d 175, 180 (4th Cir. 2019). To seek a reduced sentence

under the First Step Act, a defendant must first establish that the defendant was sentenced for a "covered offense." Pub. L. 115-391 (2018), Sec. 404. There is no dispute that Defendant seeks sentence reduction for a covered offense and is eligible for a sentence reduction under the First Step Act. *See Wirsing*, 943 F.3d at 176.

After establishing that a defendant seeks sentence reduction for a covered offense, in its discretion a court may "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." Pub. L. 115-391 (2018), Sec. 404(b). In using its discretion to decide whether a defendant's sentence should be reduced, a court must consider the factors in 18 U.S.C. § 3553(a). *United States v. Chambers*, 956 F.3d 667, 674 (4th Cir. 2020). Courts may also consider a defendant's post-sentencing conduct. *Id.* Further, "any Guidelines error deemed retroactive . . . must be corrected in a First Step Act resentencing." *Id.* at 668.

Here, the parties dispute whether the decisions in *Chambers* and *Norman* require the Court to correct Defendant's sentencing given that he was subject to the career offender enhancement when sentenced. *Norman* established that a conspiracy conviction under 21 U.S.C. § 846 no longer qualifies as a generic conspiracy under the career offender guidelines set forth in U.S.S.G. § 4B1.2(b). *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019). Because *Norman* was decided after Defendant's sentencing, the parties dispute whether it is "deemed retroactive" because, if it was, then the Court must not use the career offender enhancement if it proceeds to resentence Defendant under the First Step Act. *See Chambers*, 956 F.3d at 668. Using the career offender enhancement, Defendant's guideline imprisonment range would remain 262 to 327 months but, without the career offender enhancement, Defendant's guideline range is ninety-two to 115 months. ECF Doc. 133 at 2. Nevertheless, the Court need not decide whether *Norman* applies

retroactively, because resentencing under the First Step Act is not warranted in this case after considering the other applicable factors.

As noted above, courts must consider the factors in 18 U.S.C. § 3553(a) when determining whether resentencing is appropriate under the First Step Act. *Chambers*, 956 F.3d at 674. The factors in 18 U.S.C. § 3553(a) include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence for criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with necessary education, training, medical care or other treatment; (3) "the kinds of sentences available"; (4) the kinds of sentence and sentencing ranges established for the applicable category of offense; (5) the pertinent policy statements; (6) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; and (7) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

Here, Defendant has a long criminal history, including numerous drug-trafficking convictions, possession of weapon on school ground, and unlawful concealment. ECF Doc. 122 at 7–12. Even in the instant offense, Defendant was charged with possessing a firearm in furtherance of a drug-trafficking offense, although he was only convicted for conspiracy to possess with intent to distribute at least fifty grams of cocaine base due to the plea agreement. *Id.* at 3–4. Though Defendant has participated in numerous educational programs or work assignments while incarcerated, he has also developed an extensive post-sentencing disciplinary record. ECF Doc. 133 at 3–4. He has received disciplinary actions twice since having filed the present motions. *Id.*

at 3. Moreover, five of his disciplinary actions relate to fighting or assaulting another person, while many others pertain to possessing unauthorized items and stealing. *Id.*

As to concerns regarding unwarranted sentence disparities, Defendant argues that the Court should reduce his sentence to reflect the other decisions where courts have varied from the career offender range when resentencing under the First Step Act. ECF Doc. 131 at 14–15. Meanwhile, the United States argues that varying from the career offender range would create sentence disparity as compared to other similarly situated defendants sentenced after the effective date of the Fair Sentencing Act and before *Norman*. ECF Doc. 134 at 8. Indeed, there are potential risks of sentencing disparity in the aftermath of *Norman* regardless of the Court's decision today, as decisions differ significantly on how to apply *Norman*. *See, e.g.*, *United States v. Robinson*, No. 1:07-cr-00032-MR-4, 2020 WL 7080304, at *3 (W.D.N.C. Dec. 3, 2020) (stating "*Norman* has not been deemed to apply retroactively"); *United States v. Cherry*, No. 5:07-CR-00040-KDB-DSC, at *4 (W.D.N.C. Sept. 22, 2020) (recognizing *Norman* and its implications, but refusing to decide whether it applies retroactively); *United States v. Johnson*, No. 7:04-CR-128-1, 2020 WL 2563541, at *5 (W.D. Va. May 20, 2020) (concluding there is no "indication that *Norman* has been made retroactively applicable on collateral review"); *United States v. Stewart*, No. ELH-08-0415, 2020 WL 4432571, at *6 (D. Md. July 31, 2020) (stating the court "may consider *Norman*" in endeavoring "to impose a reasonable sentence"). The Court recognizes the implications of *Norman*, but—based on the facts in *this* case—does not find that concerns of sentencing disparity weigh in favor of reducing Defendant's sentence.

In consideration of all the relevant factors, the facts here simply do not warrant sentence reduction. The sentence imposed was correct at the time of sentencing and reflects the seriousness of Defendant's offense, while promoting respect for the law and providing just punishment for the

offense. Moreover, Defendant was already given a sentence of just ninety-two percent of the guideline range. Defendant is to be lauded for his efforts to participate in educational and vocational training while imprisoned. However, his long criminal history and long list of post-sentencing disciplinary violations give the Court great cause for concern. *See United States v. Robinson*, 2020 WL 7080304, at *4 (noting the defendant completed over seventy educational courses and work assignments and had just six disciplinary citations but was still not entitled to sentence reduction). These factors strongly weigh against reducing Defendant's sentence, especially due to a need to afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant. After consideration of all the relevant factors, the Court finds that Defendant's Motion for Sentence Reduction Under the First Step Act should be **DENIED**.

### b. Defendant's Motions for Compassionate Release

Defendant also seeks a reduced sentence in his two Motions for Compassionate Release. In relevant part, upon motion by a defendant after exhausting administrative remedies,[1] courts may reduce a defendant's sentence "after considering the factors set forth in section 3553(a) to the extent that they are applicable," if the court finds "extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1). The applicable policy statement is found in Section 1B1.13 of the United States Sentencing Commission Guidelines Manual, which sets forth extraordinary and compelling reasons that may justify compassionate release. Such reasons include that the defendant is suffering from "a serious physical or medical condition"

---

[1] There is no longer any dispute regarding whether Defendant exhausted his administrative remedies. *See* ECF Doc. 127.

which "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility." U.S.S.G. § 1B1.13 cmt. n.1(A)(i)-(ii).[2] Beyond finding extraordinary and compelling reasons to warrant a sentence reduction, the Court must find that "the defendant is not a danger to the safety of any other person or to the community." *Id.* at § 1B1.13(2).

Defendants' Motions for Compassionate Release do not allege facts justifying sentence reduction under 18 U.S.C. § 3582(c)(1)(A). The Court notes, and the government acknowledges, that Defendant's health conditions, including Type II diabetes, increase his risk of injury or death were he to contract COVID-19. ECF Doc. 124 at 12. However, Defendant has not raised any facts to support that his medical conditions have diminished his ability to provide self-care within the environment of the correctional facility—even in the wake of COVID-19. It appears that Defendant's medical conditions are well under control in his current facility. Defendant has not established that extraordinary and compelling reasons exist to justify release. Even if extraordinary and compelling reasons did exist, the Court has already weighed the Section 3553(a) factors and finds that they weigh against sentence reduction. Moreover, the Court is concerned that Defendant is a danger to the safety of the community, given his criminal history and his disciplinary record during imprisonment. Therefore, Defendant's Motions for Compassionate Release should also be **DENIED**.

### III. ORDER

**IT IS HEREBY ORDERED** that, for the reasons indicated herein:

1. Defendant's *pro se* Motion for Compassionate Release, filed on April 17, 2020 [ECF Doc. 117] is **DENIED**;

---

[2] There are other extraordinary and compelling reasons listed in the relevant policy statement, but the reason listed above is the one relevant to these motions.

2. Defendant's *pro se* Motion for Compassionate Release, filed on May 5, 2020 [ECF Doc. 118] is **DENIED**;

3. Defendant's counseled Motion for Sentence Reduction Under the First Step Act of 2018 [ECF Doc. 131] is **DENIED**.

   **SO ORDERED**.

Signed: December 24, 2020

Graham C. Mullen
United States District Judge